63 P.3d 198 (2003)
Mindy SITTON, Jesus Bancaco, Iris Salter, Joanne Roose, Virgie Harris, individually, and on behalf of all others similarly situated in the State of Washington, Respondents,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a foreign insurer, Petitioner.
No. 49923-8-I.
Court of Appeals of Washington, Division 1.
February 18, 2003.
*201 Peter Anthony Danelo, Daniel J. Dunne, Robin E. Wechkin, Kevin James Craig, Heller, Ehrman, White & McAuliffe, Seattle, for Appellant.
Patrick H. Lepley, Karen Kathryn Koehler, Lepley & Greig, PLLC, Bellevue; Bradley Jerome Moore, Michael E. Withey, Kessler, Stritmatter, Kessler, Whelan, Seattle; Keith Leon Kessler, Stritmatter, Kessler, Whelan, Withey & Coluccio, Hoquiam; Richard Friedman, Bremerton, for Respondents. *199
*200 ELLINGTON, J.
This is a class action by State Farm insureds, who allege State Farm acted in bad faith to deny coverage for medical expenses. We granted discretionary review to determine whether the trial court erred in refusing to decertify the class, particularly in light of its adopted trial plan. We conclude the court did not abuse its discretion in granting class certification under CR 23(b)(3), but that certification under CR 23(b)(1) and (b)(2) was improper. We also vacate the trial plan, because it contemplates an award of damages without proof of causation and without an opportunity for State Farm to show it had a reasonable justification for denying individual claims.

FACTS
The individual plaintiffs made claims for medical treatment under the personal injury protection (PIP) provisions of their State Farm automobile insurance policies. As permitted by the policies, State Farm referred their claims for medical utilization reviews as to whether treatment was reasonable, necessary, and undertaken for injury caused by a covered accident. Following the reviews, all the claims were denied, at least in part.
Plaintiffs filed this class action lawsuit contending State Farm uses the review process in bad faith for the sole purpose of denying or limiting benefits, as part of a secret cost containment policy. Plaintiffs allege breach *202 of contract, breach of fiduciary duty, breach of the duty of good faith and fair dealing, violation of the Consumer Protection Act, and unjust enrichment. They seek damages, and injunctive and declaratory relief.
The class consists of:
All persons in the State of Washington who, within the last six years, were insured by State Farm for personal injury protection (PIP) and who sustained injuries in a covered occurrence (motor vehicle accident) and who submitted a PIP claim to State Farm for medical expenses which was referred to an external medical utilization review, and who were denied or limited in the PIP benefits by State Farm based on such review.[1]
Initially, the court certified the class under CR 23(b)(1)(A) and (b)(2), but not CR 23(b)(3). The trial court then entered an additional order certifying the class under CR 23(b)(3).
Thereafter, the court granted plaintiffs' motion to bifurcate the trial, and adopted a plan for two trial phases. In trial Phase I, the jury is to determine whether State Farm implemented a program designed to deny, limit, or terminate PIP claims, and whether the plan was implemented in bad faith. If so, the jury will determine the amount of "aggregate damages." Trial Phase II, which is still largely inchoate, will address issues of individual damages.
Following adoption of the trial plan, State Farm sought decertification of the class. The trial court denied the motion. We granted discretionary review.

DISCUSSION
I. Class Certification
A. Generally. "Washington courts favor a liberal interpretation of CR 23 as the rule avoids multiplicity of litigation, `saves members of the class the cost and trouble of filing individual suits[,] and ... also frees the defendant from the harassment of identical future litigation.'"[2] A trial court's decision regarding class certification is reviewed for a manifest abuse of discretion.[3] Ordinarily, we will not disturb a certification decision if the record indicates consideration of the CR 23 criteria and the decision is based on tenable grounds.[4] We resolve close cases in favor of allowing or maintaining the class.[5]
The four prerequisites to a class action under CR 23(a)[6] (numerosity, commonality, typicality, and adequacy of representation) are not challenged here. Rather, State Farm contends the requirements of CR 23(b)[7] are not satisfied.
*203 B. CR 23(b)(1)(A) & (b)(2). State Farm argues that certification is inappropriate under either (b)(1) or (b)(2), because the primary objective of the suit is monetary damages. State Farm is correct.
Classes certified under CR 23(b)(1) are designed to avoid prejudice to the defendant or absent class members.[8] Certification under subsection (b)(2) is appropriate when injunctive or declaratory relief is requested, and when the defendant has acted or refused to act or failed to perform a legal duty on grounds generally applicable to the class.[9] Classes certified under subsections (b)(1) and (b)(2) are "mandatory" classes; that is, the results are binding on all class members, who may not choose to opt out of the class.[10] Notice to class members under these subsections is left to the trial court's discretion.[11] Mandatory class members thus may be deprived of their rights to notice and an opportunity to control their own litigation.[12] For these reasons, when plaintiffs are seeking monetary damages, certification under (b)(1) or (b)(2) violates due process unless the monetary damages sought are merely "incidental to the primary claim for injunctive or declaratory relief."[13]
Incidental damages are those "`that flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief.'"[14] Such damages are really a group remedy, rather than an individual one:
Ideally, incidental damages should be only those to which class members automatically would be entitled once liability to the class (or subclass) as a whole is established.... Moreover, such damages should at least be capable of computation by means of objective standards and not dependent in any significant way on the intangible, subjective differences of each class member's circumstances. Liability for incidental damages should not require additional hearings to resolve the disparate merits of each individual's case; it should neither introduce new and substantial legal or factual issues, nor entail complex individualized determinations.[15]
Here, plaintiffs seek group remedies in the form of an order enjoining State Farm to pay valid PIP claims, and various declarations of the rights of policy holders. But these remedies follow only if their contract and tort theories succeed, and on those theories they seek individual monetary damages, *204 which will require individualized determinations about each class member's circumstances. These damages are not incidental. The class members are thus not afforded sufficient due process protections by CR 23(b)(1) and (b)(2), and class certification under these subsections was improper.
This error is not alleviated by later certification under CR 23(b)(3), with its full panoply of due process protections, because the court certified all claims under all three subsections. As a result, a class member who elects to opt out under CR 23(b)(3) remains bound by the CR 23(b)(1) and (b)(2) certification, but the parameters of the CR 23(b)(1) and (b)(2) certifications are unclear. It is not impossible that an action merits certification under all three sections of the rule, but it is surely rare, and such occasions require a more definite and clear order than that entered here. And ordinarily, these bases for certification should not be combined.[16]
C. CR 23(b)(3). Class certification is appropriate under CR 23(b)(3), the most comprehensive type of class, if common questions of fact or law predominate over individual ones and a class action is superior to other available methods of adjudication.[17] State Farm argues that common questions do not predominate, and that a class action is unmanageable.
Predominance. State Farm contends the claims of each class member will necessarily require litigation regarding the facts of each accident, the medical condition of each insured, the specific action taken by each review panel, individual causation, and individual damages. In essence, State Farm contends that the presence of individual issues regarding causation, reliance, or damages precludes certification.[18] Plaintiffs respond that the predominance requirement is satisfied, because the overriding common issue is whether State Farm had a practice of implementing utilization reviews in bad faith.
The predominance requirement is not a rigid test, but rather contemplates a review of many factors, the central question being whether "adjudication of the common issues in the particular suit has important and desirable advantages of judicial economy compared to all other issues, or when viewed by themselves."[19] The predominance requirement is not a demand that common issues be dispositive, or even determinative; it is not a comparison of court time needed to adjudicate common issues versus individual issues; nor is it a balancing of the number of issues suitable for either common or individual treatment.[20] Rather, "[a] single common issue may be the overriding one in the litigation, despite the fact that the suit also entails numerous remaining individual questions."[21] The presence of individual issues may pose management problems for the judge, but as the chief commentator has observed, courts have a variety of procedural options to reduce the burden of resolving individual damage issues, including bifurcated trials, use of subclasses or masters, pilot or test cases with selected class members, or even class decertification after liability is determined.[22] Division *205 Two applied this analysis in its recent decision in Behr:
In deciding whether common issues predominate over individual ones, the court is engaged in a "`pragmatic' inquiry into whether there is a `common nucleus of operative facts' to each class member's claim." That class members may eventually have to make an individual showing of damages does not preclude class certification.[23]
When appropriate, therefore, a suit may be maintained as a class action with respect to particular issues;[24] as the case progresses, the trial court has discretion to narrow the issues to be resolved as part of the class action. The predominance standard is not strictly applied to every aspect of the plaintiffs' claims; rather, questions of judicial economy are central:
When a court decides to limit a class action with respect to particular common issues only, such limitation will necessarily afford predominance as to those issues. Because a limitation of a class action to designated common issues lies in the court's discretion under Rule 23(c)(4) in every class action, and because this court power has the capability of automatically satisfying the predominance test under Rule 23(b)(3), it follows that the predominance test of Rule 23(b)(3) must be read with a recognition of the power of the court to uphold a class with respect to particular issues under Rule 23(c)(4).
....
... Judicial economy considerations are central to the predominance test of Rule 23(b)(3) and the court's power to limit a class to selected issues under Rule 23(c)(4). Because of authorized court powers under this latter subdivision, a Rule 23(b)(3) class may be certified in appropriate circumstances, without strictly satisfying the predominance test which was designed to apply to the totality of issues in a lawsuit. Many precedents construing the predominance requirement reflect the confluence of the provisions of Rule 23(b)(3) and (c)(4).[25]
Under State Farm's interpretation of the predominance requirement, no subsection (b)(3) class could be certified where the claim requires resolution of individual issues such as causation and harm. We reject this interpretation of the rule as inconsistent with the purpose of class actions and as failing to consider judicial economy. Here, the central allegation is that State Farm's utilization reviews are not for the purpose of determining whether medical treatment is covered, but are a means to wrongfully deny or limit benefits. A common nucleus of operative facts appears to exist on this issue, and that satisfies the predominance standard of CR 23(b)(3).
Superiority. CR 23(b)(3) also requires "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." This requirement focuses upon a comparison of available alternatives.[26] Here, the traditional alternatives of joinder, intervention, or consolidation are not available, and CR 23 is to be construed liberally in favor of permitting certification.[27] State Farm contends, however, that case management problems will render a class adjudication impossible. This is a matter best determined by the trial court. Even with the myriad of management devices available, the management of any complex class action is likely to present a challenge. But forcing numerous plaintiffs to litigate the alleged pattern or practice of bad faith in repeated individual trials runs counter to the very purpose of a class action:
It must also be remembered that manageability is only one of the elements that goes into the balance to determine the *206 superiority of a class action in a particular case. Other factors must also be considered, as must the purposes of Rule 23, including: conserving time, effort and expense; providing a forum for small claimants; and deterring illegal activities.[28]
State Farm does not demonstrate that insurmountable obstacles stand in the way here. The trial court did not abuse its discretion by maintaining the class under CR 23(b)(3).
II. Validity of Trial Plan
We granted discretionary review at this stage of the litigation in large part because of the trial plan adopted by the court. The plan calls for bifurcated proceedings.[29] In Phase I, the jury will be asked to resolve the following questions:
1. Did State Farm create and implement a program designed to deny, limit and/or terminate PIP claims?
2. Did this program violate State Farm's duty of good faith and fair dealing to class members?
3. Did this program cause harm to the class members?
4. What is the amount of aggregate class damages?
5. Should punitive damages be awarded as a punishment to State Farm for breaching its duty of good faith through creation and implementation of the program?[30]
Phase II will address "the amount of each class member's individual bad faith damages on an individually litigated basis depending on the amount of each class member's asserted bad faith damages."[31] As to Phase II, "details and case schedule [remain] to be determined."[32]
State Farm argues the trial plan violates due process and its right to a jury trial, because it contemplates an award of damages without requiring plaintiffs to prove individual causation and without permitting State Farm to advance its defenses.[33] We agree.
The central contention here is that State Farm acted in bad faith to deny PIP benefits to its insureds. The harm alleged is individual to each insured. Yet the trial plan contemplates class-wide damages ("aggregate damages"), which plaintiffs define as "the difference between PIP claims made and those paid by State Farm."[34] Plaintiffs contend such aggregate damages should be automatically awarded if the jury finds in Phase I that State Farm acted in bad faith. As Commissioner Verellen stated in granting discretionary review: "The plaintiffs' faulty syllogism is that, because a bad faith program was intended to limit claims and resulted in the limitation of claims, the full amount of every claim made is valid."
The present trial plan allows the jury to make a damages award without requiring individual claimants to establish causation and damages or providing State Farm the opportunity to show it had a reasonable justification for denying individual claims. The effect of the plan is to eliminate causation as an element of plaintiffs' bad faith and CPA claims. This is plainly error, and we vacate the order establishing the trial plan.
This is not to say that bifurcation is not a possibility here. A trial plan involving bifurcated phases, such as a bad faith phase and a separate, causation/damages phase, may be appropriate, so long as it requires individual claimants to demonstrate causation and damages, and provides a mechanism for State *207 Farm to show justification for denying individual claims.
State Farm also contends, however, that such bifurcation would violate its right to a jury trial under the Washington Constitution. Federal Seventh Amendment jurisprudence guides us as to the right to jury trial under our state constitution.[35] Bifurcation does not violate the Seventh Amendment unless the questions sought to be bifurcated are so interwoven that one cannot be submitted independently of the other without confusion and uncertainty.[36] Here, whether State Farm created and implemented a program for the purpose of wrongfully denying, limiting, or terminating PIP benefits is an issue separate and distinct from individual determinations of whether such a program caused harm, and if so, how much. These issues are not so interwoven as to create confusion or uncertainty.
State Farm also argues that individual determinations of causation and damages in the second phase of a bifurcated proceeding would be unmanageable because "there would be thousands of juries spread throughout the state, entirely outside the control of the Phase I judge."[37] This argument is essentially the same as State Farm's superiority argument. It is true that management of any complex class action with significant individual issues is likely to be a challenge. As described above, however, the trial court has a variety of tools available to deal with these challenges. As illustrative examples,[38] the court can make use of special masters to preside over individual causation and damages proceedings.[39] So long as State Farm retained the right to dispute the master's findings and request a jury determination, State Farm's right to a jury trial is not compromised. Or the court could certify subclasses in each county where class members reside,[40] or even decertify the class altogether after the bad faith phase, and give notice to class members concerning how to proceed on individual damage claims.
In short, although we vacate the order establishing the current trial plan, State Farm has not shown that a litigation plan bifurcating the trial is inherently unmanageable.
III. Presumption of Harm
The parties have devoted extensive briefing to the question of whether a finding of bad faith entitles plaintiffs to a rebuttable presumption of harm. The presumption of harm doctrine in bad faith insurance cases arose from the Supreme Court's decision in Safeco Insurance Co. v. Butler,[41] and was described further in Coventry Associates v. American States Insurance Company[42] and Besel v. Viking Insurance Company.[43] These cases do not offer a clear line of analysis as to the circumstances in which a bad faith plaintiff is entitled to a rebuttable presumption of harm. We need not resolve this question here, however, because at oral argument, plaintiffs conceded they have the burden of establishing harm and damages, and do not seek to rely on a rebuttable presumption.

*208 CONCLUSION

State Farm has not established that the trial court abused its discretion in certifying the class under CR 23(b)(3). Class certification under CR 23(b)(1)(A) and (b)(2), however, was error, and we direct vacation of that order. Finally, the trial plan contravenes due process, and we direct the court to vacate that order.
Remanded for further proceedings consistent with this opinion.
SCHINDLER, J., and APPELWICK, J., concur.
NOTES
[1] Clerk's Papers at 871.
[2] Smith v. Behr Process Corp., 113 Wash.App. 306, 318, 54 P.3d 665 (2002) (quoting Brown v. Brown, 6 Wash.App. 249, 256-57, 492 P.2d 581 (1971)).
[3] Lacey Nursing Ctr., Inc. v. Dep't of Revenue, 128 Wash.2d 40, 47, 905 P.2d 338 (1995).
[4] Lacey, 128 Wash.2d at 47, 905 P.2d 338.
[5] Behr, 113 Wash.App. at 318-19, 54 P.3d 665 (citing Esplin v. Hirschi, 402 F.2d 94, 101 (10th Cir.1968)).
[6] CR 23(a) provides:

(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
[7] CR 23(b) provides:

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of section (a) are satisfied, and in addition:
(1) The prosecution of separate actions by or against individual members of the class would create a risk of
(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interest; or
(2) The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
(3) The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.
[8] 1 HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS, § 4.01, at 4-4 (3rd ed.1992).
[9] Id.
[10] See id. § 4.20 at 4-71 ("class members in subdivision (b)(1) or (b)(2) class actions do not have the right to opt out of a class action prior to judgment on the merits"); see also Fed. Rule Civ. Proc. 23 advisory committee's notes, 28 U.S.C.App. at 696.
[11] CR 23(d), (e); Dore v. Kinnear, 79 Wash.2d 755, 766-67, 489 P.2d 898 (1971). In contrast, classes certified under CR 23(b)(3) require the option to litigate separately and the best practicable notice of their rights to all class members. Phillips Petroleum v. Shutts, 472 U.S. 797, 812, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985).
[12] Molski v. Gleich, 307 F.3d 1155, 1167 n. 14 (9th Cir.2002) (citing Jefferson v. Ingersoll Int'l Inc., 195 F.3d 894, 897 (7th Cir.1999)).
[13] Molski, 307 F.3d at 1165. The class in Molski was certified under subsection (b)(2). The court noted, however, that any distinction between the mandatory classes in terms of due process requirements is "without merit" because these concerns "would be applicable to any mandatory class, whether under Rule 23(b)(1) or (b)(2)." Molski, 307 F.3d at 1167 n. 14.
[14] Molski, 307 F.3d at 1167 (quoting Allison v. Citgo Petroleum Corp., 151 F.3d 402, 415 (5th Cir.1998) (emphasis omitted)).
[15] Molski, 307 F.3d at 1167 (quoting Allison, 151 F.3d at 415).
[16] 1 NEWBERG, supra note 8, § 4.20, at 4-71.
[17] Id. § 4.01, at 4-4 to -5.
[18] State Farm calls our attention to a number of cases in support of its arguments. We find those cases inapposite, as involving claims entirely different from those at issue here, see, e.g., Castano v. American Tobacco Co., 84 F.3d 734 (5th Cir. 1996) (no predominance because trial court could not know whether common issues would be "significant" portion of individual trials where court had no knowledge of how "addiction-as-injury" case would be tried); as factually different from this case, see, e.g., Liberty Mut. Ins. Co. v. Tribco Constr. Co., 185 F.R.D. 533 (N.D.Ill. 1999) (no predominance where oral representations about the insurance policy at issue varied from consumer to consumer); or as so procedurally different that they are of no help, see, e.g., Pickett v. Holland AmericaLine Westours, Inc., 145 Wash.2d 178, 35 P.3d 351 (2001) (where trial court denied certification, but case settled on class basis, only question is fairness of settlementno need to decide whether certification was appropriate).
[19] 1 NEWBERG, supra note 8, § 4.25, at 4-86.
[20] Id. at 4-82 to 4-86.
[21] Id. at 4-84.
[22] Id. § 4.26 at 4-91 through 4-97; see also id. § 4.26 at 4-104 ("Challenges based on ... causation, or reliance have usually been rejected and will not bar predominance satisfaction because those issues go to the right of a class member to recover, in contrast to underlying common issues of the defendant's liability.").
[23] Behr, 113 Wash.App. at 323, 54 P.3d 665 (citations omitted).
[24] CR 23(c)(4).
[25] 1 NEWBERG, supra note 8, §§ 4.23, .25, at 4-79, 4-81 to 4-82 (footnotes omitted).
[26] See id. § 4.27.
[27] Behr, 113 Wash.App. at 318, 54 P.3d 665.
[28] 1 NEWBERG, supra note 8, § 4.32 at 4-129 to -130.
[29] An order to bifurcate under CR 42(b) is reviewed for an abuse of discretion. Myers v. Boeing Co., 115 Wash.2d 123, 140, 794 P.2d 1272 (1990).
[30] Clerk's Papers at 2616-17.
[31] Clerk's Papers at 2617.
[32] Clerk's Papers at 2617.
[33] State Farm also argues its right to due process would be violated if the trial court held the punitive damages phase of the trial before compensatory damages are determined. This argument was rejected by the Ninth Circuit in Hilao v. Estate of Marcos, 103 F.3d 767, 780-81 (9th Cir.1996). The problem here is not the order in which types of damages are determined, but the failure to determine causation first.
[34] Respondents' Brief at 8.
[35] Sofie v. Fibreboard Corp., 112 Wash.2d 636, 647, 771 P.2d 711 (1989), 780 P.2d 260 (1989).
[36] Arthur Young & Co. v. United States Dist. Ct., 549 F.2d 686, 693 (9th Cir.1977); Gasoline Products Co. v. Champlin Refining Co., 283 U.S. 494, 500, 51 S.Ct. 513, 75 L.Ed. 1188 (1931).
[37] Brief of Petitioner at 45-46.
[38] We emphasize that management of the action is for the trial court.
[39] See 1 NEWBERG, supra note 8, § 4.26 at 4-90 to 4-97.
[40] See CR 23(c)(4); CR 82(a)(3) (venue in an action against a nonresident is appropriate in any county in which plaintiff resides); RCW 4.12.030(1), (3) (change of venue statute authorizes a court to change the place of trial on motion when it appears that "the county designated in the complaint is not the proper county," or "the convenience of witnesses or the ends of justice would be forwarded by the change").
[41] 118 Wash.2d 383, 823 P.2d 499 (1992).
[42] 136 Wash.2d 269, 961 P.2d 933 (1998).
[43] 146 Wash.2d 730, 49 P.3d 887 (2002).