# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| KEVIN DOLAN and a class of similarly situated individuals, | No.  52253-5-II |
| Respondent, | |
| v. | |
| KING COUNTY, a political subdivision of the State of Washington, | UNPUBLISHED OPINION |
| Respondent, | |
| DEPARTMENT OF RETIREMENT SYSTEMS, | |
| Appellant. | |

CRUSER, J.  —  In this class action litigation, the superior court awarded attorney fees and

costs to class counsel based on the common fund doctrine.  On appeal, the Department of

Retirement Systems (DRS) argues that the superior court erred by exempting class member Judge

Laura Inveen from paying a pro rata share of the class's common fund attorney fees.  DRS argues

that the exemption violates the common fund doctrine principles set forth in *Bowles v. Department

of Retirement Systems*, 121 Wn.2d 52, 847 P.2d 440 (1993), and CR 23(b)(1) and (2).  DRS also

requests guidance on how it should implement the process for assessing common fund attorney

fees for other class members who, like Inveen, are members of the judiciary or may become members of the judiciary in the future.

We affirm and hold that the superior court did not abuse its discretion when providing equitable relief to Inveen by ordering DRS to not reduce Inveen's pension due to the common fund attorney fees, thereby exempting Inveen from payment of attorney fees. Additionally, we decline DRS' request to provide guidance on how it should implement the process for assessing the common fund attorney fees.

FACTS

I. BACKGROUND

In 2006, Kevin Dolan filed a class action lawsuit against King County (County) on behalf of all employees of public defender agencies with which the County had contracted to provide legal defense services. The complaint alleged that the class members were entitled to membership and benefits in the Public Employees' Retirement System Plan (PERS), but that the County had not reported their services to DRS or made retirement contributions on their behalf. The class members requested declaratory and injunctive relief concerning the County's obligation to provide PERS benefits and an order requiring the County to make all contributions needed to fund those benefits. The superior court certified the class as a mandatory injunctive class action under CR 23(b)(1) and (2).

The case proceeded to a bench trial. The superior court ruled that the class members should be considered county employees for purposes of receiving coverage under PERS. Based on its decision, the court issued a permanent injunction requiring the County to enroll class members in PERS.

2

The County appealed to our Supreme Court. *Dolan v. King County*, 172 Wn.2d 299, 310, 258 P.3d 20 (2011) (*Dolan* I). The court affirmed the superior court, holding that class members were county employees for purposes of PERS and were entitled to be enrolled in PERS. *Id.* at 320. The court remanded for further proceedings regarding remedies. *Id.* at 322.

On December 18, 2012, the County and the class reached a settlement. The County agreed to make retroactive payments to PERS on behalf of the County as the employer and on behalf of the class members as the employees without receiving reimbursements from the class. The County also agreed to make payments from the date that the County should have enrolled the class members. Pursuant to the settlement, the class members received retroactive benefit eligibility and service credits in PERS from the date that the County should have enrolled the class members.

DRS was not a party to the settlement. Shortly after the superior court's preliminary approval of the settlement agreement, DRS moved for full intervention. The court allowed DRS limited intervention to object to the settlement and to have the right to appeal. The court entered a final order approving the settlement over DRS' objections.

DRS appealed the superior court's approval of the settlement agreement to this court. *Dolan v. King County*, No. 44982-0-II (Wash. Ct. App. Nov. 18, 2014) (unpublished), http://www.courts.wa.gov/opinions/pdf/D2%2044982-0-II%20%20Unpublished%20Opinion .pdf (*Dolan* II). DRS argued that the Administrative Procedure Act[1] (APA) removed the superior court's original subject matter jurisdiction for matters affecting PERS, and the court erred by denying DRS' motion to intervene and in ruling that the settlement agreement bound DRS. We

---

[1] Ch. 34.05 RCW.

affirmed the superior court's original jurisdiction but reversed and remanded the court's order denying DRS' motion for full intervention and final order approving the settlement agreement.

On remand, the class moved to modify the superior court's April 2009 permanent injunction to clarify issues of service credit for the class members. On June 5, 2015, the court entered an order modifying the permanent injunction. The County and DRS agreed to its entry. The modification order stated that the class was entitled to receive retroactive PERS service credit for work as county employees between January 1, 1978 and March 31, 2012. Additionally, the County would be required to pay DRS retroactive employer and employee contributions of approximately $32 million. The order did not resolve the issue of whether DRS could assess interest on retroactive service credit contributions. The order also did not resolve the issue of whether class members had an obligation to pay attorney fees or the method of paying attorney fees.

The class moved for approval of an attorney fee award of $12,554,000 pursuant to the common fund doctrine. On August 28, 2015, the superior court entered an order granting the class's request. Under this theory, the court ordered the attorney fees to be taken from the class members' overall pension benefits recovered through the suit. The court ordered the attorney fees to be immediately paid by the County from employee PERS contributions that the County would have otherwise paid to DRS. The reduced pension benefits created a reduction from each class member's pension.

Class members' monthly pension checks would then be reduced by a maximum of about 13 percent to account for each class member's pro rata share of the attorney fees from the common recovery. The reduction assured that DRS would be repaid by the class as a whole for the attorney

fees paid by the County from the contributions to be made by the County. The class members were also provided the option to repay DRS by paying their pro rata share of the attorney fees in a lump sum to DRS directly before receiving monthly pension benefits.

The County and DRS disputed whether the County should be required to pay interest in the amount of about $64 million on the retroactive contributions (omitted PERS contributions) for the service credits. DRS also contended that under the APA, the superior court did not have subject matter jurisdiction to address whether the County was required to pay interest because it had not exhausted all administrative remedies. The court disagreed. The court ruled that it had subject matter jurisdiction to decide the interest issue and it could exercise equitable authority in ordering a fair remedy. After considering the equities of each party, the court assessed the County interest in the amount of $10.5 million on retroactive contributions. The remaining interest would be socialized among PERS participants.

DRS appealed the superior court's order on jurisdiction and assessment of interest, arguing that the court erred in applying equitable principles to determine the County's interest obligation, and in the alternative, equity did not support imposing only a portion of the interest. *Dolan v. King County*, No. 49876-6-II (Wash. Ct. App. May 1, 2018) (unpublished) http://www.courts.wa.gov/opinions/pdf/D2%2049876-6-II%20Unpublished%20Opinion.pdf (*Dolan* III). We held that the superior court had subject matter jurisdiction regarding the interest matter. We also held that the superior court did not err in exercising its exclusive and equitable authority in ruling that the County was required to pay a portion of the interest on retroactive PERS contributions.

II. CURRENT APPEAL

On March 11, 2016, the superior court entered an agreed order implementing the class repayment plan for pension contributions used for the attorney fees. The court ordered the Office of the State Actuary (OSA) to calculate the amount each class member owed in common fund attorney fees by calculating the total pension liability (value) added by service credits obtained though the *Dolan* litigation. The court also ordered OSA to calculate a reduction percentage to be applied to each class member's pension.

On August 30, 2017, the superior court entered an agreed order that approved notices to be sent to class members. The notices included an invoice for each class member's pro rata share of attorney fees owed and the two payment options. The court's order also provided that if DRS learned of additional class members before sending the notices, DRS and class counsel must estimate the pro rata share of the newly identified members. Subsequently, DRS sent each of the 635 class members a notice specific to that member.

On June 26, 2017, the class brought a motion on behalf of Julia Garratt, a class member and a King County Superior Court Judge. In addition to receiving PERS benefits as a result of the *Dolan* litigation, Garratt was a participant in the judicial benefit multiplier program. Under that program, a judge earns 3.5 percent of their average final salary each year of service with up to a maximum of 75 percent of their final salary. RCW 41.40.404. In contrast, under the PERS program[2] Garratt selected, members earn 2 percent of their average final salary for each year of service, with no maximum percentage. RCW 41.40.620.

---

[2] PERS offers three plans: "Plan 1," "Plan 2," and "Plan 3." *See* RCW 41.40.005; former RCW 41.40.010 (33), (34), (35) (2003). Garratt selected PERS Plan 2.

Stated differently, the judicial benefit multiplier program allows a judge to increase the benefit multiplier used in their retirement benefit calculation for their judicial service. However, benefits are capped at 75 percent of a judge's average final salary. This program allows a judge to accrue service credit[3] and benefits faster in exchange for a lower benefit cap.

Garratt consulted DRS and learned that with about 6 more years of judicial service, plus her previous PERS service credits received outside of the *Dolan* litigation, she would reach the maximum pension amount. Her additional 6 years of service as a judge would increase her pension by about 21 percent, which would bring her to the maximum of 75 percent of her average final salary. Therefore, if Garratt worked 6 more years as a judge, her 12 years of PERS service credits obtained through the *Dolan* litigation would have no impact on her pension.

The class moved to revise Garratt's and other similarly situated class members' responsibility for paying a portion of the common fund attorney fees. The class asked the court to require Garratt and other similarly situated class members to pay only the attorney fees to the extent that the service credit received through the *Dolan* litigation actually enhanced their pensions. In Garratt's case, this would only be if she retired before she reached the maximum of her average final salary. The superior court denied the motion.

On May 21, 2018, the class moved to correct the notices and pro rata attorney fee amounts for five class members—Anne Dederer, Robin Jones, Carolyn Frimpter, Linda Moland, and Inveen. Dederer and Jones received notices from DRS, but the notices did not include all their

---

[3] "Service" for PERS Plan 2 and Plan 3 members is defined as periods of employment by a member in an eligible position or positions for one or more employers for which compensation is paid. Former RCW 41.40.010(9)(a), (b). For example, compensation earned in full-time work for 90 or more hours in one month constitutes one service credit month. *Id*.

service credit. Dederer's notice was missing 68 months of service credit and Jones's notice was missing 22 months of service credit. The notices thus understated their pro rata share of the common fund attorney fees. Frimpter and Moland did not receive any notice from DRS because the parties did not know of their existence at the time DRS sent the notices. The County transmitted 15 months of service credit to Frimpter and 63 months service credit to Moland. Because DRS did not send Frimpter and Moland a notice, they were not assessed their pro rata share of the common fund attorney fees even though they received service credits due to the *Dolan* litigation.

In regards to Inveen, the class argued that Inveen should not be assessed a pro rata share of the common fund attorney fees. Inveen worked as a public defender in 1980, 1981, and a small part of 1982. Several years before she received the notice, Inveen filled out a questionnaire sent from class counsel where she disclosed her work history. Inveen did not have any other involvement in the litigation. As a result of the litigation, the County transmitted 27 months of service credit to Inveen. Inveen received a notice from DRS stating that she owed $14,482 in attorney fees for the service credits she received from the *Dolan* litigation.[4]

The class argued that Inveen should be exempt from paying attorney fees because Inveen could not benefit from the litigation. Like Garratt, Inveen participated in the judicial benefit multiplier program. However, when she received the notice from DRS regarding the attorney fees

---

[4] Although DRS does not concede this point, Inveen's pro rata share of the attorney fees appears to be miscalculated. In its motion, the class notes that another superior court judge, who is about the same age as Inveen and who worked as a public defender at around the time as Inveen, was assessed a pro rata share of about $5,000 in attorney fees. The other superior court judge also worked as a public defender for five months longer than Inveen.

owed, Inveen's pension was at the maximum 75 percent of her average final salary without receiving the service credit for her two plus years of service as a public defender. Because Inveen's pension had reached its maximum, any service credit that she was entitled to as a result of the *Dolan* litigation did not have any impact on her pension. Thus, unlike Garratt, Inveen did not receive *any* benefit from the litigation.

The class argued that it was unfair to the class for Dederer, Frimpter, Jones, and Moland to receive *Dolan* service credit increasing the value of their PERS pensions but have a reduced responsibility or no responsibility for attorney fees associated with the *Dolan* litigation. The class further argued that it was equally unfair to assess Inveen with attorney fees when she received no benefit from the *Dolan* litigation. The class asked the superior court to direct DRS to send corrected notices to Dederer and Jones and send notices to Frimpter and Moland assessing their pro rata share of attorney fees.

The class also asked the superior court to rule that Inveen's PERS pension not be reduced at retirement due to the common fund attorney fees because she received no benefit from the *Dolan* litigation. The class reasoned that assessment of the correct amount of attorney fees for Dederer and Jones and assessment of attorney fees to Frimpter and Moland would remedy any shortage to the PERS fund due to Inveen's nonpayment of attorney fees.[5]

DRS opposed the class's motion. DRS conceded that there was an error in calculating Dederer's and Jones's pro rata share of attorney fees. However, DRS argued that in the interest of

---

[5] The class estimated that for Dederer's pro rata share to be correct, she must be assessed an additional $4,608. For Jones's pro rata share to be correct, the class estimated that she must be assessed an additional $1,664. The class calculated Frimpter's share to be $2,083 and Moland's share to be $12,952. These amounts add up to around $21,000.

finality and to avoid periodically recalculating attorney fees and reissuing notices to each class member, the superior court should not order DRS to recalculate or calculate their pro rata share of attorney fees.[6] Regarding Frimpter and Moland, DRS also argued that assessing them with their pro rata shares of attorney fees conflicted with the court's prior order implementing the repayment plan. The prior order stated that only class members discovered *before* DRS sent the notices would be obligated to pay a pro rata share of the attorney fees, and Frimpter and Moland were discovered *after* DRS sent the notices.

DRS contended that waiving payment for Inveen conflicted with the superior court's order regarding Garratt because Inveen and Garratt were "similarly situated judges." Clerk's Papers (CP) at 239. DRS argued that the class was collaterally estopped from relitigating the issue of whether a judge participating in the judicial benefit multiplier program should be relieved of the responsibility to pay their pro rata share of the attorney fees.

The superior court granted the class's motion in part, ruling that DRS "shall not withhold any sums from Ms. lnveen's retirement based on the *Dolan* litigation." *Id.* at 263-64. The court found that DRS' reduction of Inveen's pension due to the attorney fees was "inherently unfair and an unintended consequence of the *Dolan* litigation." *Id.* at 263. The court ruled that "lnveen should not unjustly enrich third parties for payment of assessed attorney's fees which apply in her unique fact pattern." *Id.*

---

[6] DRS also briefly argued that there was no indication that the class notified the four members regarding the change in attorney fees, therefore assessing Frimpter and Moland with fees and assessing Dederer and Jones with additional fees would violate their due process rights. DRS does not renew this argument on appeal.

The superior court denied the class's request to order DRS to send corrected notices to Dederer and Jones and to send notices to Frimpter and Moland. The court found that any fault regarding the miscalculation lays with the County or DRS and ruled that DRS "shall not recalculate pro rata fees as a result of this order." *Id.* at 266. The court determined that "[t]he Doctrine of Finality has credibility as applied to this fact pattern," and the "fact that other class members may pay for these class members' share of the attorney's fees is not [a] sufficient reason to go back and attempt to correct the error." *Id.* at 264.

DRS appeals the superior court's ruling ordering DRS to not withhold any sums from lnveen's retirement based on the *Dolan* litigation.

DISCUSSION

I. INVITED ERROR

The class argues that we should not consider DRS' appeal because DRS invited any error regarding loss to the PERS fund. The class contends that assessing Dederer and Jones with the correct amount of attorney fees and assessing Frimpter and Moland with attorney fees, which DRS opposed, would have remedied any shortage to the PERS fund due to Inveen's nonpayment of attorney fees.[7] The class argues that by opposing the motion, DRS created the shortfall to the PERS fund and is therefore prohibited from claiming error due to the shortfall on appeal.

In response, DRS argues that it did not invite the error regarding the Inveen order because the superior court ordered the PERS fund to pay for Inveen's share of the attorney fees, a remedy

---

[7] DRS does not dispute the class's position that assessing Dederer and Jones with the correct amount of attorney fees and assessing Frimpter and Moland with attorney fees would have been sufficient to reimburse the common fund for the fees that the fund did not receive from Inveen.

not requested by either party. We hold that DRS invited any error regarding a shortfall to the PERS fund, but DRS did not invite any error regarding the Inveen order.

The invited error doctrine "'prohibit[s] a party from setting up an error at trial and then complaining of it on appeal.'" *Angelo Prop. Co. v. Hafiz*, 167 Wn. App. 789, 823, 274 P.3d 1075 (2012) (alteration in original) (internal quotation marks omitted) (quoting *City of Seattle v. Patu*, 147 Wn.2d 717, 720, 58 P.3d 273 (2002)). The doctrine applies when a party takes affirmative and voluntary action that induces the trial court to take the action that the party later challenges on appeal. *In re Estate of Irwin*, 10 Wn. App. 2d 924, 927, 450 P.3d 663 (2019).

In arguing invited error, the class points to DRS' argument on appeal that the superior court compromised the PERS fund by waiving Inveen's payment of the attorney fees and then precluding DRS from offsetting the loss to the fund due to Iveen's nonpayment by ordering DRS to not reassess Dederer and Jones with the correct amount of attorney fees and assess Frimpter and Moland with attorney fees. DRS argues that the court's order effectively forced uninvolved third parties to the *Dolan* litigation to pay Inveen's pro rata share of the attorney fees because the PERS fund would absorb the loss. However, DRS expressly opposed assessing the four other class members with attorney fees or a corrected fee amount below. Had DRS assessed the four other class members with their correct pro rata shares, the shortfall due to Inveen's nonpayment would have been remedied because the share amounts were greater than the amount owed by Inveen. Further, their payment would have ensured that uninvolved third parties to the *Dolan* litigation would not have paid Inveen's share of the attorney fees.

DRS relies on *Horne v. Aune*, 130 Wn. App. 183, 121 P.3d 1227 (2005), to argue that the invited error doctrine does not apply. In *Horne*, the court held that when a trial court's action was

inconsistent with the course of action suggested by the appealing party, the invited error doctrine does not apply. *Id*. at 191 n.2. DRS argues that like *Horne*, DRS' position when opposing the class's motion to correct the notices and pro rata fees for the five class members was inconsistent with the action that the superior court took. DRS opposed waiving payment for Inveen and opposed assessing and reassessing the four other class members with the correct fee amounts on the grounds that principles of finality should govern.

The superior court agreed with DRS' finality argument as it pertained to assessment and reassessment of the four other class members' fees, concluding that "[t]he Doctrine of Finality has credibility as applied to this fact pattern." CP at 264. Therefore, the court's action was not materially inconsistent with the action suggested by DRS. *Horne*, 130 Wn. App. at 191 n.2. Rather, the court's ruling was identical to DRS' argument below when opposing the assessment and reassessment of the four class members' attorney fees. A party may not use theories or arguments to his or her advantage at trial and then argue on appeal that they were erroneously accepted by the trial court. *State v. Lewis*, 15 Wn. App. 172, 176, 548 P.2d 587 (1976). Thus, we do not entertain DRS' claim that the court erred when it failed to offset the loss to the PERS fund because this error, if any error occurred, was invited by DRS.

On its own initiative, however, the superior court ordered DRS to not charge Inveen with her pro rata share of the attorney fees *and* ordered DRS to not assess and reassess the four other class members with their correct pro rata share of the attorney fees. DRS did not advocate for Inveen to be exempted from paying her pro rata share of the attorney fees or present an alternative argument that in the event Inveen was exempted, the court should order DRS to assess and reassess the four other class members with their correct pro rata share of the attorney fees. Therefore, DRS'

actions did not induce or set up Inveen's exemption, the error DRS now claims on appeal. *Angelo*, 167 Wn. App. at 823. We hold that DRS' claim of error regarding the superior court's exemption of Inveen from paying a pro rata share of the attorney fees is not barred by invited error.

## II. THE COMMON FUND DOCTRINE

### A. LEGAL PRINCIPLES

Generally, a party pays its own attorney fees unless an award of fees is authorized by contract, statute, or a recognized ground in equity. *Bowles*, 121 Wn.2d at 70 (quoting *Painting & Decorating Contractors of Am., Inc. v. Ellensburg Sch. Dist.*, 96 Wn.2d 806, 815, 638 P.2d 1220 (1982)). The common fund doctrine is an equitable ground for granting and recovering attorney fees. *City of Sequim v. Malkasian*, 157 Wn.2d 251, 271, 138 P.3d 943 (2006). Under the common fund theory, an award of attorney fees is assumed by the prevailing party instead of the losing party when the prevailing party creates a common fund for their own benefit and the benefit of others. *Winters v. State Farm Mut. Auto. Ins. Co.*, 144 Wn.2d 869, 877, 31 P.3d 1164, 63 P.3d 764 (2001).

The common fund doctrine provides that an attorney who renders services in recovering or preserving a fund in which a number of persons are interested may in equity be allowed compensation out of the whole fund. *Id*. Stated differently, the doctrine allows an attorney "in equity to recover fees in the absence of a contract or statute when his services confer a substantial benefit for a group of people." *Lynch v. Deaconess Med. Ctr.*, 113 Wn.2d 162, 167-68, 776 P.2d 681 (1989).

The common fund doctrine generates an "'equitable sharing rule.'" *Hamm v. State Farm Mut. Auto. Ins. Co.*, 151 Wn.2d 303, 310, 88 P.3d 395 (2004) (quoting *Mahler v. Szucs*, 135 Wn.2d

398, 426, 957 P.2d 632, 966 P.2d 305 (1998)). "'[W]hen one person creates or preserves a fund from which another then takes, the two should share, pro rata, the fees and costs reasonably incurred to generate that fund.'" *Winters*, 144 Wn.2d at 877 (quoting *Winters v. State Farm Mut. Auto. Ins. Co.*, 99 Wn. App. 602, 609, 994 P.2d 881 (2000), *aff'd*, 144 Wn.2d 869). Without such, a person who benefits from a lawsuit without contributing to its expense is unjustly enriched at the successful litigant's expense. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S. Ct. 745, 62 L. Ed. 2d 676 (1980).

B.  STANDARD OF REVIEW

As an initial matter, the parties disagree as to the standard of review governing our review of DRS' appeal. DRS argues that we review the superior court's ruling de novo because whether the PERS fund must pay for one of its member's pro rata share of the common fund attorney fees is a question of law. The class disagrees, arguing that the standard of review is abuse of discretion because the superior court's authority to enter the order at issue was based in equity. We agree with the class.

DRS relies on *Matsyuk v. State Farm Fire & Casualty Co.*, 155 Wn. App. 324, 329, 229 P.3d 893 (2010), and its subsequent reversal by our Supreme Court, 173 Wn.2d 643, 272 P.3d 802 (2012), a case that involved a question of law about whether a common fund was created in the automobile insurance context. The doctrine applies in this context when an automobile insurer that has paid benefits to an injured party is required to pay a pro rata share of the injured party's attorney fees anytime it seeks reimbursement out of the judgment or settlement with a tortfeasor. *Belling v. Emp't Sec. Dep't*, 191 Wn.2d 925, 931-32, 427 P.3d 611 (2018).

DRS argues that we should address this appeal as a question of law reviewed de novo pursuant to our decision in *Matsyuk* because in that case, we reviewed de novo whether the common fund doctrine applied, and the Supreme Court did not specifically address the standard of review in its reversal of our decision. 155 Wn. App. at 329-30. However, this argument is misplaced because DRS does not challenge on appeal the superior court's ruling that the common fund doctrine applied. Rather, DRS challenges the court's ruling that ordered DRS to not collect Inveen's pro rata share of the common fund attorney fees, thereby exempting Inveen from payment of attorney fees.

DRS further urges de novo review because the Supreme Court held in *Matsyuk* that the question of whether a third party should pay pro rata attorney fees under RAP 18.1 is a question of law. 173 Wn.2d at 659. But this argument is also misplaced because the award of attorney fees under RAP 18.1 is irrelevant to the question of whether the superior court improperly exempted Inveen from paying her pro rata share of the common fund attorney fees.

We disagree with DRS and hold that the superior court's authority to enter the Inveen order was based in equity because the common fund doctrine is grounded in equity and arises from equitable principles. *Bowles*, 121 Wn.2d at 70; *Hamm*, 151 Wn.2d at 311. "A court sitting in equity has broad discretion to shape relief." *Bloor v. Fritz*, 143 Wn. App. 718, 739, 180 P.3d 805 (2008). Because the common fund doctrine invoked the superior court's general equity power, we review the superior court's consideration of equities to determine whether the court abused its discretion. *Arzola v. Name Intelligence, Inc.*, 188 Wn. App. 588, 596, 355 P.3d 286 (2015). Here, we review the superior court's order granting equitable relief to Inveen from payment of her pro rata share of the attorney fees for an abuse of discretion. A trial court abuses its discretion when

16

its decision is manifestly unreasonable or based upon untenable grounds. *Havens v. C & D Plastics, Inc.*, 124 Wn.2d 158, 168, 876 P.2d 435 (1994).

C. INVEEN'S LIABILITY UNDER *BOWLES*

DRS argues that the superior court's order exempting Inveen from payment of her pro rata share of the common fund attorney fees was improper because the order violates *Bowles* by (1) shifting the responsibility of paying Inveen's share of the attorney fees to the PERS fund and (2) treating the PERS fund as property of the class. The class argues that the superior court properly exempted Inveen from paying attorney fees because Inveen did not receive any benefit from the litigation. We agree with the class.

In its final order on assessment of common fund attorney fees on Inveen, the superior court expressly adopted class counsel's arguments by finding that reduction of Inveen's pension due to attorney fees was "inherently unfair and an unintended consequence of the *Dolan* litigation." CP at 263. The court ordered DRS to not withhold the attorney fees from Inveen's retirement based on the *Dolan* litigation, concluding that "lnveen should not unjustly enrich third parties for payment of assessed attorney's fees which apply in her unique fact pattern." *Id*.

In *Bowles*, employees of the State covered by the PERS pension plan filed a class action suit against DRS, arguing that DRS improperly limited accrued vacation and sick leave benefits ("leave cashouts"). 121 Wn.2d at 57. Our Supreme Court held that DRS violated the employees' pension rights when it placed certain limitations on leave cashouts. *Id*. at 68, 69. The court also affirmed the grant of attorney fees to the employees under the common fund doctrine because the employees successfully sued to secure payment of additional funds into their pension plan and increased benefits to all plan members. *Id*. at 71. The court affirmed the trial court's order that

the PERS fund immediately pay the attorney fees on behalf of the employees, subject to reimbursement by employees as class members. *Id*. at 75.

DRS points to the assertion in *Bowles* that even though the PERS fund will initially front the attorney fees, "'the attorney fee award remains a liability of the plaintiff class'" to argue that Inveen is liable for her pro rata share of the attorney fees as a class member. Br. of Appellant at 17 (quoting *Bowles*, 121 Wn.2d at 76). However, *Bowles* also made clear that the common fund doctrine "authorizes attorney fees *only* when the litigants preserve or create a common fund for the benefit of others *as well as themselves*." 121 Wn.2d at 70-71 (emphasis added).

The requirement that litigants benefit from the common fund is well established. *Belling*, 191 Wn.2d at 930 (quoting *Malkasian*, 157 Wn.2d at 271). However, Washington case law discusses this requirement only when determining whether a party created a common fund entitling the party's attorney to fees from the common fund and not in the context of whether an individual class member may be exempt from paying common fund fees if the class member did not benefit from the common fund. *Belling*, 191 Wn.2d at 929-30; *Winters*, 144 Wn.2d at 877, 881-82; *Bowles*, 121 Wn.2d at 71.

The class points us to *Boeing*, 444 U.S. at 474, a case that arose from a class action to recover for Boeing's failure to give adequate notice of intention to call in certain convertible debentures. The district court awarded attorney fees under the common fund doctrine and provided that "[e]ach individual recovery was to carry its proportionate share of the total amount allowed for attorney's fees, expenses, and disbursements." *Id*. at 476. Boeing appealed the attorney fee award, arguing that the court should have awarded attorney fees from only the portion of the fund actually claimed by class members. *Id*. at 477. Boeing argued that the common fund doctrine was

18

inapplicable to the unclaimed portion of the fund because class members who never made a claim against the fund would never receive the benefit of the fund. *Id.*

The Supreme Court disagreed. *Id.* at 480-81. The Supreme Court concluded that the attorneys for a successful class may recover attorney fees from a common fund created for the class, even if some class members did not make a claim against the fund. *Id.* The Supreme Court reasoned that

> [t]o claim their logically ascertainable shares of the judgment fund, absentee class members need prove only their membership in the injured class. Their right to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel.

*Id.* at 480. In order to ensure that some members of the class do not bear additional costs, the rule requires "every member of the class to share attorney's fees to the same extent that he can share the recovery." *Id.* Although Boeing itself could not be obligated to pay the fees awarded to the class attorneys, Boeing's claim against unclaimed money could not defeat each class member's equitable obligation to share the expenses of litigation. *Id.* at 482.

DRS does not dispute that Inveen did not receive any benefit from the *Dolan* litigation. However, pursuant to a settlement agreement, the County made retroactive payments to the PERS fund on its own behalf as the employer and on behalf of the class members as the employees. Although the County made these payments on behalf of Inveen, her interest in the payments will never vest because her pension was already capped when she received the notice regarding her pro rata share of the common fund attorney fees. This is because when Inveen received the notice regarding her pro rata share of the common fund attorney fees, Inveen's pension had already reached the maximum allowance of 75 percent of her average final salary. Due to Inveen's

inability to ever claim the funds the County paid to PERS on her behalf, the payments will go unused by Inveen.

Although Inveen has proven her "membership in the injured class," Inveen is unable to "share the harvest of the lawsuit" because Inveen cannot claim the two years of service credit to benefit her pension. *Id.* at 480. Because Inveen did not have a "right to share the harvest of the lawsuit upon proof of [her] identity," Inveen did not receive any benefit created by the efforts of class counsel. *Id.*

This rationale is consistent with the superior court's conclusion that Inveen's circumstances differ from Garratt's circumstances. Unlike Inveen, when DRS assessed Garratt with her share of the common fund attorney fees, Garratt's pension had not reached the maximum amount. With the service credit received from the *Dolan* litigation, Garratt had the option of immediately retiring with a full pension. Therefore, Garratt benefited from the *Dolan* lawsuit because she had a "right to share the harvest" of the *Dolan* lawsuit by immediately retiring with a full pension, regardless of whether she exercised that right. *Id.*

As a result of the litigation, Inveen was assessed a pro rata share of $14,482 in attorney fees. If Inveen had paid the attorney fees without receiving any benefit of the litigation, other litigants would have been unjustly enriched at Inveen's expense. DRS counters that by exempting Inveen from paying her pro rata share, the responsibility to pay Inveen's share impermissibly shifted to all PERS members and employers who, like Inveen, received no benefit from the *Dolan* litigation. DRS does not attempt to explain how shifting the cost from Inveen to the PERS fund, including other similarly situated PERS members who received absolutely no benefit from the *Dolan* litigation, is not a legitimate equitable remedy.

20

Sitting in equity, the superior court had broad discretion to balance the relative equities of the parties in order to fashion a remedy. *Arzola*, 188 Wn. App. at 596. Here, the superior court invoked its equitable power to prevent other successful litigants from being unjustly enriched at Inveen's expense. We agree with the superior court that requiring Inveen to be responsible for her pro rata share of the common fund fees is "inherently unfair and an unintended consequence of the *Dolan* litigation." CP at 263. Holding otherwise would be contrary to the equitable principle that litigants who benefit from a common fund or have the ability to "share the harvest" of a common fund also share the burden of the attorney fees. *Boeing*, 444 U.S. at 480; *Hamm*, 151 Wn.2d at 320. Without this principle, those who benefit from the lawsuit without contributing to its cost are unjustly enriched at the expense of a successful litigant. *Boeing*, 444 U.S. at 478.

We hold that the superior court did not violate the common fund doctrine when it exempted Inveen from paying a pro rata share of the attorney fees based on the *Dolan* litigation.

### III. CR 23(b)

DRS next argues that Inveen's exemption from paying a pro rata share of the common fund attorney fees violated CR 23(b)(1) and (2) by effectively excluding Inveen from the class. We disagree.

CR 23 governs class actions. Washington courts favor liberal interpretation of CR 23 to "avoid multiplicity of litigation," in order to save "members of the class the cost and trouble of filing individual suits" and also to free "the defendant from the harassment of identical future litigation." *Brown v. Brown*, 6 Wn. App. 249, 257, 492 P.2d 581 (1971).

A class action may be maintained under CR 23(b)(1), (2), or (3). Here, the superior court certified the class under subsections (b)(1) and (b)(2).[8] Subsection (b)(1) is intended to avoid prejudice to the defendant or absent class members. *Sitton v. State Farm Mut. Auto. Ins. Co.*, 116 Wn. App. 245, 251, 63 P.3d 198 (2003). Certification under CR 23(b)(2) is appropriate when injunctive or declaratory relief is requested and when the defendant has acted, refused to act, or failed to perform a legal duty on grounds generally applicable to the class. *Id.*

Although all three categories have corresponding procedural requirements, classes certified under CR 23(b)(1) and (2) are "'mandatory'" classes. *Nelson v. Appleway Chevrolet, Inc.*, 160 Wn.2d 173, 189, 157 P.3d 847 (2007) (quoting *Sitton*, 116 Wn. App. at 252). As a mandatory class, all members of the class are bound by the determination of the respondent's rights and obligations to the class. *Brown*, 6 Wn. App. at 256. This is because certification under subsection (b)(1) is reserved for actions where individual adjudications would be impossible or unworkable, and certification under subsection (b)(2) was intended for relief that impacts the entire class and

---

[8] Subsections (b)(1) and (b)(2) state,

> **(b) Class Actions Maintainable**. An action may be maintained as a class action if the prerequisites of section (a) are satisfied, and in addition:
> (1) The prosecution of separate actions by or against individual members of the class would create a risk of
> (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
> (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interest; or
> (2) The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

can be remedied by a class-wide injunction. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362-63, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011).[9]

DRS argues that excluding Inveen from assessment of common fund attorney fees effectively allowed Inveen to opt out of the class, in violation of CR 23(b)(1) and (2). DRS contends that the court's decision violated the procedural requirements of CR 23(b)(1) and (2) because as a mandatory class, the result of the litigation is binding on all class members. However, exempting Inveen from payment of the attorney fees did not necessarily equate to Inveen opting out of the class action as a whole. Inveen did not argue that she should not be bound by the determination of the County's obligation to provide retroactive PERS benefits to the class. *See Brown*, 6 Wn. App. at 256. Inveen also did not claim that she was entitled to a different form of relief against the County or that the relief granted did not remedy the County's failure to provide PERS benefits while she was employed as a public defender. *See Sitton*, 116 Wn. App. at 251.

Moreover, as noted above, the County contributed funds to PERS on Inveen's behalf. In order to fully exempt Inveen from the class, the County must subtract all 27 months of service credit Inveen earned through the *Dolan* litigation for her past employment as a public defender. However, the County already paid the PERS fund for the retroactive service credit on behalf of itself as the employer and on behalf of Inveen as the employee. For Inveen to be deemed *fully* opted out of the class, the PERS fund would have had to reimburse the County for these payments

---

[9] "CR 23 is identical to its federal counterpart, Fed. R. Civ. P. 23." *Pickett v. Holland Am. Line-Westours, Inc.*, 145 Wn.2d 178, 188, 35 P.3d 351 (2001). When the state and federal rules at issue are substantially similar, we look to federal decisions for guidance in interpreting and construing the state rule. *Smith v. Behr Process Corp.*, 113 Wn. App. 306, 319 n.2, 54 P.3d 665 (2002).

because Inveen would no longer be a class member entitled to the 27 months of service credit for her past employment as a public defender. This did not occur.

We hold that Inveen's exemption from paying a pro rata share of the common fund attorney fees did not effectively exclude Inveen from the class in violation of CR 23(b)(1) and (2).

## IV. DRS' REQUEST FOR GUIDANCE

DRS argues that if we affirm the superior court's order, we should provide guidance to DRS on how it should implement the *Dolan* common fund attorney fees process for other class members who are members of the judiciary or who will become members of the judiciary in the future.

We decline DRS' request to provide guidance because any guidance would constitute an advisory opinion.

There must be a justiciable controversy before the jurisdiction of the court may be invoked. *Wash. Educ. Ass'n v. Wash. State Pub. Disclosure Comm'n*, 150 Wn.2d 612, 622, 80 P.3d 608 (2003). A justiciable controversy exists when

> (1) . . . an actual, present and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative, or moot disagreement, (2) between parties having genuine and opposing interests, (3) which involves interests that must be direct and substantial, rather than potential, theoretical, abstract or academic, and (4) a judicial determination of which will be final and conclusive.

*Id*. at 622-23 (alteration in original) (internal quotation marks omitted) (quoting *To-Ro Trade Shows v. Collins*, 144 Wn.2d 403, 411, 27 P.3d 1149 (2001)). The four justiciability factors '"must coalesce"' to ensure that a court does not enter the prohibited area of advisory opinions. *Id.* at 623 (quoting *Diversified Indus. Dev. Corp. v. Ripley*, 82 Wn.2d 811, 815, 514 P.2d 137 (1973)).

24

DRS asks us to contemplate a hypothetical situation where a different class member who is also enrolled in the judicial benefit multiplier program challenges the common fund attorney fees as applied to that class member. Providing the requested guidance would require us to speculate on scenarios that do not exist in the present case. Were we to issue such an opinion, it would be advisory. Any future dispute that arises from the *Dolan* litigation must be decided on the basis of the evidence presented in that forum.

Because DRS requests guidance on a hypothetical future dispute as opposed to an actual present existing dispute or the seeds of a mature one, we refrain from addressing DRS' request and hold that its claim is not justiciable.

V. SANCTIONS

The class argues that we should impose monetary sanctions under RAP 18.9 against DRS because DRS' appeal is frivolous. We disagree and hold that DRS' appeal is not frivolous.[10]

An appellate court may award fees for a frivolous appeal. RAP 18.9(a). "[A]n appeal is frivolous if it raises no debatable issues on which reasonable minds might differ and it is so totally devoid of merit that no reasonable possibility of reversal exists." *Protect the Peninsula's Future v. City of Port Angeles*, 175 Wn. App. 201, 220, 304 P.3d 914 (2013). We consider the civil appellant's right to appeal an adverse judgment, and we resolve any doubts about whether an appeal is frivolous in the appellant's favor. *Id*.

---

[10] In support of its argument that DRS' appeal is frivolous, the class attached a letter containing communications between the parties. DRS' motion to strike this document is granted. We see no proper purpose for filing such document nor does the document have any relevance to resolving the matters presented in this appeal. *See Heckard v. Murray*, 5 Wn. App. 2d 586, 600, 428 P.3d 141 (2018), *rev. denied*, 192 Wn.2d 1013 (2019).

No. 52253-5-II

DRS' appeal is not frivolous. DRS raises a debatable issue of whether the superior court properly exempted Inveen from assessment of common fund attorney fees under both the common fund doctrine and CR 23, and DRS provided factual and legal support for its claims. For these reasons, we deny the class's request to impose sanctions under RAP 18.9(a).

CONCLUSION

We hold that the invited error doctrine does not apply to the court's ruling regarding Inveen, the subject of this appeal. We hold that the superior court did not abuse its discretion when ordering DRS to not reduce Inveen's pension due to common fund attorney fees assessed to her as a class member of the *Dolan* litigation. We do not provide DRS with guidance regarding future challenges to the common fund attorney fees and decline to impose monetary sanctions under RAP 18.9 against DRS because DRS' appeal is not frivolous. Accordingly, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, J.

We concur:

WORSWICK, J.

LEE, C.J.

26